**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

WANDA SENTELL                                                                    PLAINTIFF

v.                                        Case No. 4:08CV00629 JLH

                                                                          DEFENDANT/
RPM MANAGEMENT COMPANY, INC.                            THIRD PARTY PLAINTIFF

v.

ROBERT J. BAILEY                                              THIRD PARTY DEFENDANT

<u>**OPINION AND ORDER**</u>

        Wanda Sentell commenced this action against RPM Management Company, Inc., on July 23,

2008, alleging violations of the Fair Housing Act (FHA).  On February 5, 2009, RPM filed a third

party complaint against Robert Bailey, alleging that his architectural designs constituted violations

of the FHA, breach of contract, and negligence.  Bailey has moved for summary judgment, and RPM

has responded.  On June 16, 2009, Sentell filed a motion for leave to file a first amended complaint

to add Bailey as a defendant.  For the following reasons, Sentell's motion for leave to amend is

denied, and Bailey's motion for summary judgment is denied.

**I.**

        RPM operates the Village Square Apartments in Cabot, Arkansas.  Wanda Sentell, who

claims to have a qualified disability, filed a complaint with the Department of Housing and Urban

Development (HUD) via the Arkansas Fair Housing Commission on December 19, 2006, alleging

violations of the FHA.  The commission determined that the property did not meet the FHA's

accessibility requirements, that the doorways were too narrow, and that the bathrooms did not allow

for installation of grab bars.  The commission found that approximately 378 interior doors and 108

bathrooms were not in compliance.  In this action, Sentell alleges that it was RPM's duty to design

and construct the apartment complex in accordance with the FHA and implementing regulations.

RPM has filed a third party complaint against Robert Bailey alleging that it contracted with Jim Etters, sole proprietor of Tree House Developers, LLC, to manage and supervise the architectural plans and the construction of the apartment complex.  Etters and Tree House Developers then entered into a contract with Bailey, a licensed architect, to design the apartment plans.  It is undisputed that the apartments were substantially complete in June 2004.  In the third party complaint, RPM alleges that Bailey is directly liable for any FHA violations as he was responsible for the design, and that RPM is entitled to contribution from Bailey for any damages awarded under Sentell's FHA claim and for RPM's costs in defending the lawsuit.  RPM also alleges that it was a third party beneficiary of the contract between Etters and Tree House Developers and Bailey, that Bailey breached the contract with Etters and Tree House Developers, and that RPM sustained damages as a proximate result of that breach.  Finally, RPM makes a claim for negligence, alleging that Bailey breached his duty to use ordinary care in designing the apartment complex.

Sentell has now filed a motion for leave to file a first amended complaint. In her proffered first amended complaint, Sentell includes Bailey as a defendant with RPM, making essentially the same claims for violation of the FHA as she made against RPM in the pending complaint.

## II.

### A.    MOTION FOR LEAVE TO AMEND

The Court first considers whether to grant Sentell's motion for leave to amend.  A court should freely give leave to amend when justice so requires. Fed. R Civ. P. 15(a)(2).  A district court can refuse to give leave to amend where it will result in "undue delay or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). A court can deny leave to amend as futile where the amended pleading would not survive a motion to dismiss. *See Owen v. General Motors Corp.*, 533 F.3d 913, 921 (8th Cir. 2008).

In his objection to Sentell's motion for leave to amend, Bailey argues that granting her leave to amend would be futile because the applicable statute of limitations bars her claim against him, so her first amended complaint could not survive a motion to dismiss. The FHA prohibits discrimination in connection with the design and construction of covered multifamily dwellings. 42 U.S.C. § 3604(f)(3)(C). A plaintiff must commence a civil action within two years after the occurrence or termination of the allegedly discriminatory practice. 42 U.S.C. § 3613.

Although the Eighth Circuit has not yet ruled on when the statute of limitations accrues under the FHA for an action for improper design and construction, Bailey cites the Court to a line of cases supporting the conclusion that the continuing violation doctrine does not apply to FHA design and construction cases. *Garcia v. Brockway*, 526 F.3d 456, 462–64 (9th Cir. 2008) ("Although the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, failing to design and construct is a single instance of unlawful conduct."); *Taxi Connection v. Dakota, Minn. & Eastern R.R. Corp.*, 513 F.3d 823, 825–26 (8th Cir. 2008) (distinguishing between discriminatory acts and discriminatory effects in refusing to apply the continuing violation doctrine to allegations of termination of a contract); *Nuetzman v. Con-Way Transp. Serv., Inc.*, 2007 WL 2908112, at * 6 (D. Minn. 2007) ("A plaintiff cannot assert a continuing violation based on isolated instances of discrimination in the past, even if effects of the

discrimination continue into the present."); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 506, 507 (E.D. Va. 2002) ("[I]t is clear that the continuing effects of a previous discriminatory act do not constitute a continuing violation" because the proper emphasis must be on the defendant's "acts (*i.e.*, the design and construction of non-compliant buildings), rather than the continuing effects (*i.e.*, the continuing inaccessible features) that those acts caused.").

Several district courts have adopted the reasoning in *Garcia* and *Moseke*.  In *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 719 (W.D. Ky. 2003), the district court stated:

> The continuing violation doctrine does in fact apply so long as there is some ongoing *act* being performed as it pertains to the design and construction of the development. The mere existence of a non-compliant building, however, is not an act.  The statute of limitations . . . begins to run in design and construction cases as to the entire development when the last unit is sold because this is the last occurrence of discrimination.

In *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1141 (D. Idaho 2003), the court reviewed the cases and concluded "that the continuing violations theory is not applicable for purposes of design and construction cases pursuant to the Fair Housing Act because the failure to design and construct in compliance with the Act has a continuing effect rather than constituting a continuing violation.  In *Kuchmas v. Towson University*, 553 F. Supp. 2d 556, 562–63 (D. Md. 2008), the court relied on *Moseke* to distinguish between building managers and architectural designers in applying the FHA statute of limitations.  *But see Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218, 1222 (D. Nev. 2005) (holding that the continuing violation doctrine may apply to FHA statute of limitations for construction claims).  Relying on the reasoning in these cases, Bailey argues that the statute of limitations on Sentell's claim against him began to

run at the time that the construction was completed in June 2004, so her claim against him is time barred.

Sentell responds that the FHA statute of limitations on her claim against Bailey was tolled pursuant to 42 U.S.C. § 3613(1)(B), which provides for tolling during a pending administrative proceeding. Sentell argues that the statute of limitations was tolled from December 19, 2006, when she filed her administrative complaint with HUD, until July 21, 2008, when she voluntarily withdrew her complaint from the administrative proceeding. Therefore, Sentell concludes, her amended complaint is being brought within the two-year limitations period.

Sentell also takes issue with Bailey's argument that the continuing violation doctrine does not apply in FHA design and construction cases. Bailey cites to the Fair Housing Act Design Manual developed for HUD:

> With respect to the design and construction requirements, complaints could be filed at any time that the building continues to be in noncompliance, because the discriminatory housing practice—failure to design and construct the building in compliance—does not terminate.

FAIR HOUSING ACT DESIGN MANUAL 22 (1998). HUD takes a different view from the cases to which Bailey cited: "A complainant aggrieved because [a building] was not designed and constructed to meet the Fair Housing Accessibility Guidelines, may allege a continuing violation regardless of when construction of the building was completed." TITLE VIII COMPLAINT INTAKE, INVESTIGATION, AND CONCILIATION HANDBOOK, Chapter 3: Jurisdiction, at 3–5 (1995) (available at http://www.hud.gov/offices/adm/hudclips/handbooks/fheh/80241/index.cfm).

Bailey replies that Sentell fails to cite any case or statutory law holding that the continuing violation doctrine applies to FHA design and construction cases. Bailey also argues that the two-year

limitations period was not tolled by Sentell's administrative proceeding because he was not made a respondent in that proceeding. Bailey cites to several cases supporting the argument that because Bailey was not a respondent in Sentell's administrative proceeding, and thus was not put on notice of her complaints, the tolling provision of 42 U.S.C. § 3613 is inapplicable to her case against him. *See, e.g.*, *Fair Housing Council of Oregon v. Cross Water Development, LLC*, 2009 WL 799685, at *2 (W.D. Wash. Mar. 24, 2009) (because the administrative complaint was not timely filed, there was no basis for application of the statutory tolling provision); *Tillery v. Darby-Rogers Co.*, 2006 WL 2735162, at *3 (M.D. Fla. Sept. 25, 2006) ("failure to rent" claims were not subject to the tolling provisions of 42 U.S.C. § 3613 because plaintiffs did not file an administrative complaint regarding failure to rent).

Although the Eighth Circuit has yet to rule on whether the alleged discriminatory practice may form a continuing violation in FHA design and construction cases, the Court is persuaded that, based on the reasoning in the line of cases cited by Bailey, the continuing violation doctrine should not apply to Sentell's claims against Bailey.[1]  Bailey's involvement with the Village Square Apartments was as the designing architect, not the apartment complex owner or manager. *See Kuchmas*, 553 F. Supp. 2d at 562–63 (distinguishing between architects and building owners in

---

[1] Although there is some literature written for or endorsed by HUD that approves of the continuing violation doctrine, the HUD literature presented to the Court does not constitute regulatory law. On the other had, the cases support the conclusion that the continuing violation doctrine should not apply to the FHA's statute of limitations for improper design and construction. The parties have not presented, and the Court has not found, any case holding that in FHA design and construction cases, the continuing violation doctrine applies to an architect's improper design. If such were the case, the statute of limitations might never run with respect to an architect's improper design. This would run afoul of one of the purposes of statutes of limitations, "to bring finality to an issue and to prevent stale claims." *McCuskey v. Central Trailer Services, Ltd.*, 37 F.3d 1329, 1332 (8th Cir. 1994).

applying the FHA statute of limitations provision).  Although the effects of Bailey's allegedly improper design may be felt years into the future, the discrete act of alleged misconduct occurred when Bailey designed the apartment complex.  *See Moseke*, 202 F. Supp. 2d at 506, 507 (distinguishing between the defendant's acts and their continuing effects).  Thus, the statute of limitations on Sentell's claim against Bailey for improper design began to run when Bailey completed his last act as the architect for the allegedly non-compliant building.  *See id.*

The Court is also persuaded, based on the cases cited by Bailey, that the statutory tolling provision in 42 U.S.C. § 3613(a)(1)(B) does not apply to Sentell's claim against Bailey.  The provision provides that the two-year limitations period is tolled during the course of an administrative proceeding under the FHA.  Sentell's administrative complaint was not filed against Bailey, and Bailey was never made a respondent during the course of the administrative proceeding before the Arkansas Fair Housing Commission.  Sentell could have amended her administrative complaint at any time to include allegations against Bailey, but she did not do so.  42 U.S.C. § 3610(a)(1)(D).  Therefore, because Bailey was not put on notice of the administrative proceeding, the statutory tolling provision in § 3613(a)(1)(B) is not effective in tolling the running of the statute of limitations on Sentell's claim against Bailey.

Sentell's proffered first amended complaint seeks to assert a claim against Bailey that is barred by the applicable statute of limitations.  As noted above, it is undisputed that the apartments were substantially complete in June 2004.  The period of limitations began to run at that time.  The statutory period of limitations expired two years later. 42 U.S.C. § 3613(a)(1)(A).  Because Sentell's FHA claim against Bailey is time barred, her proffered amended complaint would not withstand a motion to dismiss from Bailey, so granting her leave to amend would be futile.  *See Dennis v.*

*Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000). Therefore, Sentell's motion for leave to amend is denied.

**B.    MOTION FOR SUMMARY JUDGMENT**

The Court must now consider Bailey's motion for summary judgment relating to RPM's third party complaint. A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

In his motion for summary judgment, Bailey argues that the applicable statute of limitations bars RPM's claims for breach of contract and negligence. Bailey asserts that the breach of contract and negligence claims are subject to the three-year statute of limitations provided in Ark. Code Ann. § 16-56-105. *See Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 901, 935 S.W.2d 258, 261 (1996) (the three-year statute of limitations in § 16-56-105(3) governs tort claim); *Scroggin Farms Corp. v. Howell*, 216 Ark. 569, 572, 226 S.W.2d 562, 564 (1950) (the three-year statute applies to all contracts not in writing). Bailey argues that the latest occasion when he could have breached the contract was June 2004, when the project was substantially completed. Because RPM did not file its third party complaint until February 2009, Bailey argues, the statute of limitations bars its breach of contract and professional negligence claims.

RPM asserts that its claims are not statutorily barred for three reasons. First, RPM argues

that the date of accrual for the statute of limitations is the date that RPM first learned that Bailey's plans did not comply with the FHA. RPM states that the applicable limitations period did not accrue until RPM actually learned of the violation, and that it did not learn of the violation until December 19, 2006. Second, RPM argues that the date of substantial completion, June 2004, is relevant only to the five-year limitations period on actions alleging deficiency in design of construction pursuant to Ark. Code Ann. § 16-56-112. Thus, RPM says that its claim is timely under both § 16-56-105 and § 16-56-112. Third, RPM argues that the applicable statute of limitations for its claims is found under Ark. Code Ann. § 16-56-111, which provides a five-year limitations period on actions to enforce written obligations. RPM says that Bailey entered into a written obligation when he affixed his seal to the architectural drawings and that the drawings constitute a written instrument.

In reply, Bailey cites *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), and *Ford's Inc. v. Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90 (1989), for the proposition that Arkansas has rejected the discovery rule for limitations in professional malpractice cases. Bailey also cites *East Poinsett County School District v. Union Standard Ins. Co.*, 304 Ark. 32, 800 S.W.2d 415 (1990), for the proposition that the five-year limitations period in Ark. Code. Ann. § 16-56-112 is a maximum period for suit but does not extend an otherwise applicable statute of limitations, such as a three-year period for breach of an oral contract and professional negligence claims. Finally, Bailey argues that RPM's reliance on the limitations period for written contracts is misplaced because RPM has provided no evidence of a written contract with Bailey and was not a third party beneficiary of the contract between Bailey and Etters.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265

9

(1986), the court said, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Here, there has not been adequate time for discovery. Moreover, the statute of limitations typically is an affirmative defense that the defendant must raise and on which the defendant bears the burden of proof. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S. Ct. 750, 753, 169 L. Ed. 2d 591 (2008); *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). Therefore, Bailey cannot prevail on his motion for summary judgment, especially at this early stage, merely by pointing to RPM's failure to produce a written contract.

With respect to professional negligence, architects arguably are analogous to attorneys, for whom the statute of limitations begins to run when the negligence occurs, not when it is discovered. *Chapman*, 307 Ark. at 88, 817 S.W.2d at 425. In *Chapman*, the Supreme Court of Arkansas listed architects, along with contractors, accountants, attorneys, and other professionals who, because of the rule that the statute of limitations begins to run when the negligence occurs, "will not be forced to defend some alleged act of malpractice which occurred many years ago" and who "surely have relied on our traditional and longstanding rule." *Id*. at 88-89, 91, 817 S.W.2d at 426, 427. Thus, according to *Chapman*, the statute of limitations on RPM's negligence claims began running at the time the alleged negligence occurred. *Id.*

On the other hand, in *East Poinsett County*, the Supreme Court of Arkansas said:

This is our first opportunity to address § 16-56-112 and its effect, if any, on § 16-56-105(3) and other statutes of limitations. Before the enactment of § 16-56-112, a third party could sue architects and people in the construction and building field at any time after completion of work, so long as the third party brought suit within the applicable statute of limitations period commencing from when an injury or breach

occurred. In recognition of this fact, states, including Arkansas, adopted statutes to limit the time within which actions could be brought against persons in the construction and building field. *See generally* Annotation, *Time Limitations-Action Against Architect*, 93 A.L.R.3d 1242 (1979).

*East Poinsett County*, 304 Ark. at 33-34, 800 S.W.2d at 417. According to this statement, the period of limitations provided in § 16-56-105(3) would not begin to run on a claim against an architect until an injury occurred, which is why the Arkansas General Assembly enacted § 16-56-112. *Cf. Chalmers*, 326 Ark. at 901, 935 S.W.2d at 261 (the limitations period in § 16-56-105(3) begins to run when there is a complete cause of action and, in the absence of concealment, when an injury occurs). *See also* J.W. Looney, *When Third Means Fourth, Contract Includes Tort, and a Five-Year Statute of Limitation Actually Leaves Only Three Years or Less to File Suit: The Strange Saga of the Arkansas "Statute of Repose" in Construction Cases*, 1993 ARK. L. NOTES 87, 89.

It appears, therefore, that the issue of when the statute of limitations in § 16-56-105 begins to run for a claim against an architect in Arkansas is unsettled. *Chapman* seems to say that the statute begins to run when the negligence occurs; but *East Poinsett County* seems to say that the statute would not run until an injury occurs — hence the need for the statute of repose in § 16-56-112.

The Court has concluded that it would be imprudent to try to resolve this issue at this point because further discovery may make the issue moot. As noted, RPM has not had an opportunity to conduct discovery as to whether there was a written contract and related issues regarding Bailey's statue of limitations defense. Hence, the Court will deny Bailey's motion for summary judgment on RPM's claims for negligence and breach of contract without prejudice to Bailey's right to assert those motions anew after RPM has had ample time for discovery. Likewise, the Court will reserve

11

ruling on Bailey's motion for summary judgment on RPM's claim for contribution until the factual record is more fully developed.  If and when Bailey renews his motion for summary judgment, the parties should be prepared to brief the issue of the apparent conflict between *Chapman* and *East Poinsett County*.

**CONCLUSION**

Sentell's proffered first amended complaint would not survive a motion to dismiss by Bailey. Therefore, Sentell's motion for leave to amend is DENIED.  Documents #25 and #27.  Bailey's motion for summary judgment is DENIED without prejudice to Bailey's right to move for summary judgment when RPM has had ample time for discovery.  Document #17.

IT IS SO ORDERED this 13th day of July, 2009.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

12
