IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WANDA SENTELL                                                                                               PLAINTIFF

v.                                            Case No. 4:08CV00629 JLH

RPM MANAGEMENT COMPANY, INC.                                              DEFENDANT/
                                                                                                THIRD PARTY PLAINTIFF

v.

ROBERT J. BAILEY                                                                  THIRD PARTY DEFENDANT

## OPINION AND ORDER

Wanda Sentell commenced this action against RPM Management Company, Inc., on July 23, 2008, alleging violations of the Fair Housing Amendments Act (FHAA). On February 5, 2009, RPM filed a third party complaint against Robert Bailey, alleging that his architectural designs constituted violations of the FHAA, breach of contract, and negligence. Bailey has filed a renewed motion for summary judgment regarding RPM's claims against him, and RPM has filed a motion for summary judgment regarding Sentell's claims against it. For the following reasons, RPM's motion for summary judgment is denied, and Bailey's renewed motion for summary judgment is granted.

I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original).  A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

In a July 13, 2009 opinion and order, the Court denied Bailey's initial motion for summary judgment and denied Sentell's motion for leave to file a first amended complaint.  The Court summarized the relevant facts in that opinion and order and thus will not do so again here.  In that opinion, the Court denied Bailey's motion for summary judgment in part because Bailey could not prevail merely by pointing to RPM's failure to produce a written contract, and in part because the Court was concerned about conflicting language in Arkansas case law regarding when the statute of limitations in Ark. Code Ann. § 16-56-105 begins to run for a claim against an architect.  Bailey has now renewed his motion for summary judgment.  In addition, RPM has filed a motion for summary judgment on Sentell's claims against it.

**A.    RPM'S MOTION FOR SUMMARY JUDGMENT**

Sentell's complaint against RPM alleges that RPM is in violation of the FHAA as the owner and administrator of the Village Square Apartments; that RPM failed to ensure that the apartments were constructed in accordance with FHAA requirements; and that RPM failed to modify the apartments or provide Sentell with a reasonable accommodation.  In its motion for summary judgment, RPM argues that Sentell's claim is barred by the applicable statute of limitations.  Relying

on *Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2009), RPM argues that the limitations period on an FHAA claim accrues when the last certificate of occupancy is issued. RPM says that Sentell did not file her administrative complaint until December 2006, more than one year after the issuance of the last certificate of occupancy, meaning that she is not entitled to the statutory tolling provision. RPM concludes, therefore, that her complaint, which was not filed until more than three years after the issuance of the last certificate of occupancy, is barred by the FHAA's two-year statute of limitations.

In response, Sentell argues that the continuing violation doctrine should apply to her FHAA claim against RPM as the owner and administrator of a noncompliant apartment complex. Sentell relies on *Kuchmas v. Townson Univ.*, 553 F. Supp. 2d 556 (D. Md. 2008), which distinguishes between the owner or administrator who continues to lease noncompliant apartments and the architect or builder who originally designed or constructed the apartments, holding that the continuing violation doctrine applies to the actions of the apartment owner or administrator. In reply, RPM asserts that the reasoning in *Kuchmas* is mistaken and urges the Court to rely on *Garcia*, in which the Ninth Circuit refused to apply the continuing violation doctrine and held that "failing to design and construct is a single instance of unlawful conduct." *Garcia*, 526 F.3d at 463.

The FHAA provides that an aggrieved person may commence a civil action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The two-year limitations period may be tolled where the complainant makes an administrative complaint with HUD. 42 U.S.C. § 3613(a)(1)(B). An aggrieved person must file an administrative complaint "not later than one year after an alleged discriminatory housing practice has occurred or terminated." 42 U.S.C. § 3610(a)(1)(A)(i).

According to the undisputed affidavit of Terri McDonald, the manager of the Village Square Apartments, the last certificate of occupancy for the apartments was issued in February 2005. Sentell says that she visited the apartments on October 23, 2006, and she filed her administrative complaint on December 19, 2006. The Arkansas Fair Housing Commission issued its report on March 29, 2007, determining that there was reasonable cause to believe that a discriminatory practice had occurred. Sentell then commenced this action on July 23, 2008.

In its July 13, 2009 opinion, the Court addressed the issue of whether the continuing violation doctrine applied to Sentell's claim against Bailey, holding that the continuing violation doctrine does not apply to the actions of an architect who designs and participates in the construction of a noncompliant building and that the statute of limitations on an improper design claim against an architect begins to run no later than when the architect completes his last act with reference to the building. The Court considered the impact of *Garcia*, *Kuchmas*, and several other cases[1] to Sentell's motion for leave to amend. The Court distinguished Bailey's involvement as the designing architect

---

[1] In addition to *Garcia* and *Kuchmas*, the Court cited to the following cases: *Taxi Connection v. Dakota, Minn. & Eastern R.R. Corp.*, 513 F.3d 823, 825-26 (8th Cir. 2008) (distinguishing between discriminatory acts and discriminatory effects in refusing to apply the continuing violation doctrine to allegations of termination of a contract); *Nuetzman v. Con-Way Transp. Serv., Inc.*, 2007 WL 2908112, at *6 (D. Minn. 2007) ("A plaintiff cannot assert a continuing violation based on isolated instances of discrimination in the past, even if effects of the discrimination continue into the present."); *Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F. Supp. 2d 1218, 1222 (D. Nev. 2005) (holding that the continuing violation doctrine may apply to FHAA statute of limitations for construction claims); *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1141 (D. Idaho 2003); *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 719 (W.D. Ky. 2003); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 506, 507 (E.D. Va. 2002) ("[I]t is clear that the continuing effects of a previous discriminatory act do not constitute a continuing violation" because the proper emphasis must be on the defendant's "acts (*i.e.*, the design and construction of non-compliant buildings), rather than the continuing effects (*i.e.*, the continuing inaccessible features) that those acts caused.").

from the involvement of an apartment complex owner or manager, citing to *Kuchmas*, in which the district court distinguished between architects and building owners. This Court then held that, although the effects of an improper design may be felt for years into the future, the architect's violation of the FHAA occurs when he provides his services.

The Court did not decide whether the continuing violation doctrine applied to Sentell's claim against RPM as the manager or owner of the apartments who continued the practice of selling or leasing the noncompliant units. Sentell alleges that RPM, as the owner and administrator of the apartments, failed to provide her with an accommodation; refused to modify the apartments to make them FHAA compliant; has failed or refused to design and construct the property in general with 42 U.S.C. § 3104; and has continued to sell or lease noncompliant apartments even after their initial design and construction. These allegations distinguish this case from most of the cases that have held the continuing violation doctrine to be inapplicable because those cases address discrete acts of discrimination or FHAA design and construction claims against architects and builders. *See, e.g.*, *Garcia*, 526 F.3d at 462 (a design and construction claim); *Village of Olde St. Andrews*, 250 F. Supp. 2d at 708 (a claim against a developer, builder, and architect); *Moseke*, 202 F. Supp. 2d at 508 ("The liability of builders and architects for violations of the FHA must be found within the plain words of the statutory provision for two years."); *Nuetzman*, 2007 WL 2908112, at *6 (plaintiff failed to identify why the acts were not discrete acts or how they were a part of a continuing violation). *But see Silver State Fair Housing Council*, 362 F. Supp. 2d at 1221-22 (finding that the design and construction of multiple FHAA-violating buildings can constitute a continuing practice, and that the plaintiff's claim made barely one year after discovering the alleged violations was within the limits of the continuing violation doctrine).

In *Kuchmas*, the plaintiff argued that the continuing violation doctrine should apply to his FHAA claim against the defendants as the building owners or managers. The district court agreed, reasoning that the plaintiff's contention was consistent with *Moseke* because the defendants in *Kuchmas* "continue[d] to benefit from [negligent design and construction] by renting inaccessible units while [the architects] ceased all involvement with the building [after its initial design and construction]." *Kuchmas*, 553 F. Supp. 2d at 563. The court in *Kuchmas* held that the owners and managers of the property had an ongoing duty in light of their control of the property so that the statute of limitations began to run with respect to a design and construction claim when the plaintiff leased a unit. *Id.* That holding is consistent with *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700, 710 (D. Md. 1999), in which the court held that, where the design and construction of a condominium development did not comply with the Fair Housing Amendments Act, the continuing violation doctrine applied so that the limitations period did not begin to run until the last sale of an inaccessible unit. *See also Fair Housing Counsel, Inc. v. Village of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 719 (W.D. Ky. 2003) ("Here the unlawful practice at issue is the design and construction of multifamily housing for sale or rental. The last asserted occurrence of the practice . . . occurred when the last unit was sold which occurred within two years of this suit."). *Kuchmas* is directly on point, and this Court is persuaded by its reasoning.

The statute of limitations on Sentell's FHAA claim against RPM began to run from the last occurrence of discrimination, which was when she visited the apartments and was denied an accommodation by RPM on October 23, 2006. Sentell filed her complaint in this action on July 23, 2008. Whether or not the period of limitations was tolled while the administrative proceeding was ongoing, Sentell's complaint is within the two-year period of limitations. Therefore, her complaint

6

against RPM is not barred by the statute of limitations. RPM's motion for summary judgment is denied.

### B.     BAILEY'S RENEWED MOTION FOR SUMMARY JUDGMENT

RPM's third party complaint against Bailey alleges that RPM was a third party beneficiary of a contract entered into between Bailey and Jim Etters or Tree House Builders, LLC; that Bailey breached that contract; that Bailey had a duty to use ordinary care in designing the Village Square Apartments; and that he breached that duty. In support of his motion for summary judgment, Bailey argues that RPM has no statutory right to contribution or indemnity under the FHAA. RPM concedes that several federal district courts have held that there is no right to indemnity under the FHAA. RPM argues that those cases have not been tested on appeal and that they rely on a case, *United States v. Quality Built Constr., Inc.*, 309 F. Supp. 2d 767 (E.D. N.C. 2003), that actually supports RPM's position. RPM cites to no cases holding that there is a statutory right to contribution or indemnity under the FHAA.

Bailey has cited the Court to a line of cases holding that there is no right to contribution or indemnity under the FHAA. Although the Eighth Circuit has yet to decide this issue, the Court finds persuasive the reasoning of those cases, which are based on the Untied States Supreme Court's holding in *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981). *See United States v. Shanrie Co.*, 2009 WL 455136, at *2–4 (S.D. Ill. Feb. 23, 2009) (holding that "[i]n structuring the FHAA, Congress failed to provide a contribution or indemnification remedy for one defendant against a third-party co-defendant," and that "the legislative history does not support a stated or implied right to contribution for defendants"); *United States v. Gambone Bros. Development Co.*, 2008 WL 4410093, at *7–9 (E.D. Pa. Sept. 25, 2008)

(holding that the FHAA limits recovery for handicap discrimination to handicapped persons, meaning that a defendant itself liable under the FHAA is not among the class that the statute is intended to protect); *United States v. Quality Built Const., Inc.*, 309 F. Supp. 2d 767, 778–79 (E.D. N.C. 2003) ("The FHAA does not provide an express right to contribution or indemnity," and "there is nothing to suggest that Congress intended to create a right to contribution or indemnity for one party liable under the [FHA] from another party potentially liable under the [FHA].")  The FHAA is meant to protect the disabled, not a defendant who is itself liable under the FHAA.  RPM is not in the class of individuals that the FHAA is meant to protect.  The Court agrees with the analyses found in *Shanrie*, *Gambone*, and *Quality Built*, relying on *Northwest Airlines*, holding that there is no express or implied right to contribution or indemnity from a third-party defendant under the FHAA.  Therefore, summary judgment is granted in favor of Bailey on RPM's claim for contribution or indemnity under the FHAA.

As to RPM's state law claims, Bailey has corrected one deficiency in his earlier motion, which failed to present evidence to show that there was no written contract for his services with respect to the Village Square Apartments.  In his renewed motion for summary judgment, Bailey offers his sworn affidavit in which he testifies that in 2002 he entered into an oral agreement with Art Deming to review and stamp the plans for the Village Square Apartments which Deming would draft.  In response, RPM notes that Bailey affixed his seal to the architectural drawings and signed a certification that the plans complied with existing law.  RPM says that its claim is based on the certification, which constitutes a written instrument, so that the period of limitations is five years as provided by Ark. Code Ann. § 16-56-111.  RPM also has provided deposition testimony from the

former president of RPM that Bailey signed off on the construction drawings, so his work continued during construction.

Neither party has cited any authority as to whether Bailey's certificates constitute a written obligation so that the five-year period of limitations in Ark. Code Ann. § 16-56-111 applies. The closest case found by the Court is *Adams v. Greer*, 114 F. Supp. 770 (W.D. Ark. 1953). Greer had brought an abstract of title to date but failed to note a provision in a current mortgage that the indebtedness would be due in full if the mortgaged property were sold. Greer attached his certificate to the abstract certifying that he had carefully examined the records and found nothing affecting the title except as shown. Based on that abstract, an attorney issued a title opinion. The Adamses then purchased the property subject to the mortgage, whereupon the mortgagee accelerated the indebtedness. The Adamses filed a complaint against Greer three years and eleven months after delivery of the abstract. Greer moved to dismiss based on the three-year statute of limitations now codified in Ark. Code Ann. § 16-56-105. The Adamses argued that the abstractor's certificate was a written obligation that brought the claim within the five years of limitations now codified in Ark. Code Ann. § 16-56-111. Judge John E. Miller held that an oral contract was created when Greer agreed to bring the abstract to date, and the certificate was not a written obligation within the meaning of Ark. Code Ann. § 16-56-111. "The plaintiffs' claim is not and cannot be based on the written certificate attached to the abstract because the written certificate is only evidence of the preexisting oral or implied contract or employment." *Id*. at 775. Judge Miller held that the Adamses' claim was governed by the three-year statute of limitations applicable to oral contracts and therefore barred.

There is no distinction in principle between this case and *Adams v. Greer*. Here, Bailey entered into an oral contract to provide certain architectural services, just as Greer entered into an oral agreement to provide abstracting services. Bailey later affixed a certificate to the plans, just as Greer attached a certificate to the abstract. In both cases the certificate was evidence of a preexisting oral agreement; it was not the contract. Therefore, the breach of contract claim against Bailey is governed by the three-year statute of limitations.

A claim for breach of contract accrues when the plaintiff could have first maintained the action to a successful conclusion. *Zufari v. Architecture Plus*, 323 Ark. 411, 419, 914 S.W.2d 756, 761 (1996). Even assuming that Bailey approved construction draws, as RPM contends, he could not have performed any action that breached the contract later than the date of substantial completion. In *Zufari*, the court held that any nonperformance of a duty is a breach, and that a cause of action accrues at that time. *Id.* at 420, 914 S.W.2d at 761. In *Zufari*, the breach occurred before substantial completion, and the court held that the cause of action accrued at that time. Here, any breach must have occurred on or before substantial completion, so a cause of action for breach of contract against Bailey accrued no later than the date of substantial completion, February 10, 2005. RPM's third party complaint against Bailey was filed on February 5, 2009, which is more than three years after the latest date on which the cause of action for breach of contract could have accrued. Therefore, RPM's claim for breach of contract is barred by the statute of limitations.

The next issue is when RPM's cause of action for negligence accrued. In its earlier opinion, the Court raised the issue of whether the Arkansas cases may be in conflict on this point.

It has been a longstanding rule in Arkansas that the statute of limitations in claims for professional malpractice begins to run, in the absence of concealment of the wrong, when the

negligence occurs, not when it is discovered. *Riggs v. Thomas*, 283 Ark. 148, 149, 671 S.W.2d 756, 757 (1984). That rule dates back at least to 1877. *See White v. Reagan*, 32 Ark. 281 (1877). In *White v. Reagan*, the Supreme Court of Arkansas applied that rule to a malpractice action against an attorney, and it has consistently applied that rule to attorneys since 1877. It has applied that same rule in claims against other professionals. *See St. Paul Fire & Marine Ins. Co. v. Crittenden Abstract & Title Co.*, 255 Ark. 706, 502 S.W.2d 100 (1973) (abstractors); *Ford's, Inc. v. Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90 (1989) (accountants); *Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1996) (insurance agents).

Although the Supreme Court of Arkansas has not had a case against an architect in which it was necessary for the court to rule as to when the statute of limitations begins to run on a claim against an architect, the court has expressly said that the statute of limitations in a professional malpractice claim against an architect will begin to run when the negligence occurs. In *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), which was a legal malpractice case, the court twice listed professionals against whom the statute of limitations would begin to run in a professional malpractice claim when the negligent act occurred, and in both instances, architects were listed. In the first such passage, the court stated:

> Our traditional rule has a countervailing fairness about it. First, everyone is treated in the same manner. Second, an abstractor, accountant, architect, attorney, escrow agent, financial advisor, insurance agent, medical doctor, stockbroker, or other such person will not be forced to defend some alleged act of malpractice which occurred many years ago.

*Id*. at 88-89, 817 S.W.2d at 426. The second passage states:

> There is yet another significant reason we do not retroactively adopt the "discovery rule," "date of injury rule," or "termination of employment rule." Many abstractors, accountants, architects, attorneys, and other similar professionals surely have relied

>on our traditional and longstanding rule. In doing so, they had no reason to keep records for longer than three (3) years. As a consequence, if we retroactively changed the rule, they might easily have no materials to use in their defense. Similarly, most professional people insure themselves against malpractice suits. The terms of malpractice insurance policies may have changed over the last twenty-five years, so that a professional person who was insured years ago might not be covered today under a retroactive application of the statute of limitations.

*Id*. at 91, 817 S.W.2d at 427.

The concern about a possible conflict in the Arkansas cases arose from the following passage in *East Poinsett County Sch. Dist. No. 14 v. Union Standard Ins. Co.*, 304 Ark. 32, 800 S.W.2d 415 (1990), where the court said:

>This is our first opportunity to address § 16-56-112 and its effect, if any, on § 16-56-105(3) and other statutes of limitations. Before the enactment of § 16-56-112, a third party could sue architects and people in the construction and building field at any time after completion of work, so long as the third party brought suit within the applicable statute of limitations period commencing from when an injury or breach occurred. In recognition of this fact, states, including Arkansas, adopted statutes to limit the time within which actions could be brought against persons in the construction and building field. *See generally* Annotation, *Time Limitations – Action Against Architect*, 93 A.L.R.3d 1242 (1979).

*Id*. at 33-34, 800 S.W.2d at 417. This passage was part of the rationale for the holding that the statute of repose provided by Ark. Code Ann. § 16-56-112 did not extend the three-year period of limitations provided in Ark. Code Ann. § 16-56-105(3). That this passage refers to actions that could be brought by a third party suggests that the court was not referring to professional malpractice claims. The ALR annotation referenced in that passage confirms that the concern to be addressed by the statute of repose in Ark. Code Ann. § 16-56-112 was not professional malpractice claims but claims for personal injury or property damage sustained allegedly as a result of defective or unsafe conditions in the structure. According to the author of the ALR annotation, the period of limitations in such cases did not begin to run until the third party was injured, which might be many years after

12

the work was substantially complete. Statutes of repose around the country were enacted at the instance of architects and others in the construction industry in order to impose time limitations on claims against architects and builders for injury or death. Thus, the passage in *East Poinsett County* can be reconciled with passages in *Chapman* by the fact that they are addressing different concerns. In *East Poinsett County*, the court attempted to explain the concern that gave rise to the statute of repose in Ark. Code Ann. § 16-56-112. That concern related to claims for personal injury or property damage that might be brought by a third party – not someone for whom the building was designed and constructed – who might suffer an injury and claim defective design or construction many years after completion of the work.

Here, RPM's claim is a professional malpractice claim. Bailey was engaged to provide professional services, and it is alleged that he was negligent in the performance of those services. Although RPM did not have a contract with Bailey for professional services, Etters and Tree House Developers did, and RPM contends that it was a third party beneficiary of that contract. In other words, the professional services rendered by Bailey were rendered for the benefit of RPM, with whom Etters and Tree House Developers had contracted to provide architectural services in connection with building the apartments. According to *Chapman*, the statute of limitations for a professional malpractice claim against an architect begins to run when the negligent act occurs. As noted above, here Bailey could not have committed a negligent act later than February 10, 2005, when the project was substantially complete. The Court does not believe that *East Poinsett County* is to the contrary and therefore retracts the statement in the earlier opinion in this case that *East Poinsett County* and *Chapman* may be in conflict.

For the reasons stated, RPM's negligence and breach of contract claims against Bailey are barred by the three-year statute of limitations codified in Ark. Code Ann. § 16-56-105.

## CONCLUSION

For the foregoing reasons, RPM's motion for summary judgment is DENIED. Document #33. Bailey's renewed motion for summary judgment is GRANTED. Document #37.

IT IS SO ORDERED this 24th day of August, 2009.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE